J-A13015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: G.C.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: Y.K., MOTHER | No. 1583 WDA 2024 |

Appeal from the Order Entered November 22, 2024
In the Court of Common Pleas of Erie County Juvenile Division at No(s):
CP-25-DP-0000119-2024

| | |
|---|---|
| IN THE INTEREST OF: D.C.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: Y.K., MOTHER | No. 1584 WDA 2024 |

Appeal from the Dispositional Order Entered November 22, 2024
In the Court of Common Pleas of Erie County Juvenile Division at No(s):
CP-25-DP-0000120-2024

BEFORE: BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.: **FILED: April 19, 2025**

Y.K. ("Mother") appeals from the orders adjudicating her two minor sons, G.C.W., born November 2023, and D.C.W., born October 2024, dependent.[1] Mother's counsel has filed a petition to withdraw and brief

---

[1] We note that this Court consolidated the appeals *sua sponte* and that the children's putative father, D.R. ("Father"), did not participate in these appeals nor file his own from the dependency orders.

pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).[2] We grant counsel's petition to withdraw and affirm the dependency orders.

We glean the following from the record. At the time of D.C.W.'s birth in 2024, Mother tested positive for amphetamines. As a result, Erie County Office of Children and Youth ("OCY") caseworker, Morgan Adams, visited Mother at the hospital. Mother informed Ms. Adams that she had several untreated mental health conditions, including post-traumatic stress disorder, anxiety, and depression. Despite being pregnant with D.C.W. and caring for G.C.W. while Father worked, she admitted to self-medicating daily with methamphetamine. OCY offered Mother various services pertaining to mental health, drugs, and alcohol, but she declined. The agency also attempted to enroll Mother and Father in the family engagement initiative, but the parents were reluctant to participate. In light of the foregoing, OCY obtained emergency protective custody of the two boys. Two days later, the children were together transferred from OCY custody to kinship care with their paternal grandmother.

A dispositional hearing was held approximately two weeks following removal. Although Mother had attended D.C.W.'s first well visit, she had not otherwise been permitted to visit the children because she refused to comply

---

[2] The principles set forth in ***Anders*** apply to appeals in dependency cases, even where parental rights have not been involuntarily terminated. ***See In re J.D.H.***, 171 A.3d 903 (Pa.Super. 2017).

with the mandatory urine screens. At the time of the hearing, D.C.W. and G.C.W. both remained with paternal grandmother, were less than one year old, and represented by a guardian *ad litem*. Mother, to whom the court had appointed counsel, and Father, proceeding *pro se*, both appeared late, missing the adjudicatory portion of the dependency hearing. Nonetheless, Mother's counsel was present and stipulated on her behalf to several allegations within the dependency petition. Specifically, counsel conceded that Mother (1) had a positive urine test for high levels of amphetamines at the time of D.C.W.'s birth; (2) used methamphetamines daily during her pregnancy; (3) previously struggled with substance abuse and homelessness; (4) voluntarily relinquished her parental rights to an older child in 2020 after that child was removed from her care and adjudicated dependent; and (5) had a criminal record for public drunkenness.

Ms. Adams testified at the hearing to the foregoing history. The master found that OCY substantiated the allegations in the dependency petitions as to each child, and that dependency adjudications were appropriate. During the subsequent dispositional hearing, the parents arrived. Mother explained her drug and mental health concerns, as well as her hesitance to partake in the urine screens because of potential negative consequences flowing from various prescriptions she feared might manifest in the results. Thereafter, the juvenile court considered the recommendation of the hearing officer, adjudicated the children dependent, and ordered that they remain in their kinship placement.

Mother timely appealed and counsel simultaneously filed notice of her intent to file an **Anders** brief on appeal. In light of this intention, the court did not author a Pa.R.A.P. 1925(a) opinion and OCY declined to submit a brief to this Court. As noted, counsel has filed an application to withdraw and an **Anders** brief. Thus, we must preliminarily review counsel's compliance with the requirements of **Anders** and **Santiago**. In order to withdraw, counsel must:

>   (1)    provide a summary of the procedural history and facts, with citations to the record;

>   (2)    refer to anything in the record that counsel believes arguably supports the appeal;

>   (3)    set forth counsel's conclusion that the appeal is frivolous; and

>   (4)    state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*In re Adoption of M.C.F.*, 230 A.3d 1217, 1219 (Pa.Super. 2020) (cleaned up). Additionally, the appellant is entitled to a copy of the **Anders** brief. **See In re X.J.**, 105 A.3d 1, 4 (Pa.Super. 2014) (cleaned up).

Along with the brief, counsel has to provide a letter that advises the client of her immediate "right to: (1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that [she] deems worthy of the court's attention in addition to the points raised by counsel in the **Anders** brief." **Id**. (cleaned up). In the dependency context, because

"parents have a right to counsel at every stage of a dependency proceeding," the attorney seeking to withdraw on appeal must simultaneously "inform the parent of his or her right to counsel in any subsequent dependency or involuntary termination proceedings[.]" *In re J.D.H.*, 171 A.3d 903, 906–07 (Pa.Super. 2017).

If counsel complies with these technical requirements, "we will then undertake our own review of the appeal to determine if it is wholly frivolous." *In re Adoption of M.C.F.*, 230 A.3d at 1219 (citation omitted). We will grant counsel's petition to withdraw and affirm the order should we agree with the assessment of the identified issues and conclude, after conducting "a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated[,]" that the appeal is frivolous. *Id*. (cleaned up). However, if we find non-frivolous issues during our evaluation, we will deny the petition and direct counsel to file an advocate's brief. *Id*.

Upon review, we conclude that Mother's counsel has substantially complied with the above specifications. She provided a comprehensive history with references to the record, identified issues arguably supporting an appeal, detailed why those issues are frivolous, advised Mother of her right to proceed *pro se* or with a new attorney in this Court, and supplied to her a copy of the brief. In particular, counsel also clarified that the application to withdraw pertained solely to the instant appeals, and that counsel continued to

represent Mother in the hearings before the court of common pleas as to D.C.W. and G.C.W.

Thus, we turn our attention to the two issues identified by counsel:

1. Whether the juvenile court committed an abuse of discretion and/or error of law when it determined that the agency established, by clear and convincing evidence, that the minor children are dependent under 42 Pa.C.S. § 6302?

2. Whether the juvenile court committed an abuse of discretion and/or error of law when it determined that it is in the children's best interest to be removed from [Mother]'s home?

Mother's brief at 6 (capitalization altered and numbering supplied). Although framed as two issues, counsel addresses them together as they are inter-related. We will do the same.

Here, the juvenile court adjudicated the children dependent based upon the first definition set forth in the Juvenile Act. Thus, we conduct our review pursuant to the following principles:

To adjudicate a child dependent, the court must determine, by clear and convincing evidence, that the child:

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S. § 6302(1).

"Clear and convincing evidence" is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of facts

to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family wherever possible," *see* 42 Pa.C.S. § 6301(b)(1), a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available. This Court has defined "proper parental care" as that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child.

The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the juvenile court if they are supported by the record; but it does not require the appellate court to accept the juvenile court's inferences or conclusions of law. As such, we review for an abuse of discretion.

*Int. of M.G.*, 331 A.3d 703, 716 (Pa.Super. 2025) (some citations and quotation marks altered or omitted). If the court adjudicates a child dependent, it may then enter an order "of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child[,]" including "transfer[ring] temporary legal custody" to an approved kinship placement. *See* 42 Pa.C.S. § 6351(a)(2)(i).

Our review confirms that the juvenile court's dependency determination was amply supported by the record. At the hearing, Ms. Adams testified that Mother admitted to self-medicating her unresolved mental health issues with methamphetamines while she was both pregnant with D.C.W. and the sole caretaker of then-infant G.C.W. Indeed, she tested positive for high levels of amphetamines at the time of D.C.W.'s birth. Despite the services offered, Mother declined to participate and had not yet complied with OCY's

requirement that she undergo urine testing in order to visit her children. Mother's continued drug abuse and refusal to engage in services placed the young children at risk.

Based on the foregoing, the court properly adjudicated the children dependent and held that it was in the best interests of each child to be removed and placed in kinship care. Accordingly, we agree with counsel that it would be frivolous to challenge the court's dependency adjudications as the children were plainly without proper parental care and removal to a kinship placement was best suited to their well-being. Further, our independent review has revealed no meritorious issues that counsel failed to raise on Mother's behalf. Therefore, we grant counsel's petition to withdraw and affirm the dependency orders.

Petition to withdraw granted. Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/29/2025